[Crim. No. 14163. Second Dist., Div. Five. Dec. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN JEFFERSON HILL, Defendant and Appellant.

Edwin Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald F. Russo, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendant was found guilty of three counts of robbery. In view of the contentions raised on appeal the details of the crimes are unimportant. It is claimed that defendant did not intelligently waive his right to be represented by counsel and that his attempt to disqualify the trial judge under the provisions of section 170.6 of the Code of Civil Procedure should have been ruled effective.

### The Waiver of Counsel

On September 3, 1964, defendant and one Johnston appeared for arraignment before Judge Spencer. Defendant and Johnston were jointly charged with four counts of robbery.[1] Defendant immediately stated his desire to dismiss the public

---

[1]The jury, later, found defendant not guilty of one of the charges.

defender and requested appointment of counsel under section 987a of the Penal Code. He declared, as he was to do many more times, that he had no faith in the public defender's office. The court announced that it had no authority to appoint private counsel. Defendant said: "Then I wish to go pro per, Your Honor." Later during the proceedings defendant qualified his position as follows: "I didn't state I am going to represent myself. I won't take the Public Defender. . . . It will be under protest if I do, for the record please." The public defender was relieved. The charges were then read to defendant and he was again offered the assistance of the public defender. The court ascertained that he had finished high school. Asked how many times he had been before a court in criminal proceedings defendant said: "I know nothing about court procedures." He then admitted that he had been in court a "couple of times," charged with simple assault. He had been defended by the public defender.[2] Defendant then explained that at least one of the reasons why he had no faith in his public defender was that he had been to see him only two times and "he thinks I'm guilty already." The court informed defendant: "Now, if that is your only basis, you better reconsider. You are charged with four very serious crimes, the sentences of which can run consecutively, and you can stay in the big house forever if you are found guilty." Defendant stated: "We'd like to continue the plea until we been advised of our rights, and without waiving any time, without waiving any rights of time." The motion was denied. Defendant refused to plead and the court entered a plea of not guilty to each count.

The codefendant Johnston did precisely as did defendant. Trial was set for October 7, 1964, in the same department.

On September 16 defendant appeared before Judge Miller. Judge Spencer had been sitting in Judge Miller's department on September 3, Judge Miller having been on vacation. Certain written applications which are not part of the record before us had been made to Judge Miller. Defendant was again offered the assistance of counsel. He again expressed his lack of faith in the public defender's office, repeating that if he was forced to represent himself it would be under protest. The court reminded defendant that the case was set for trial "here" on October 7.

On October 2 there was another appearance before Judge

[2]The codefendant Johnston admitted to having been in juvenile court about four times.

Miller. The proceedings were opened by a deputy public defender who advised the court that he had talked to the defendant and Johnston and had advised them that his office would represent them if they so desired. The court then appointed the deputy to represent them solely for the hearing that was about to take place. This turned out to be something "in the nature of a discovery motion" by the deputy district attorney, who merely wanted to know whether the defendants would be ready for trial on October 7. Defendant said that he would not be ready because he could not defend himself and did not know anything about court procedure. Then there developed the now familiar dialogue between the court and defendant concerning the availability of the public defender's office, defendant's lack of faith in it, and so on. In the course of the discussion the court explained to the defendant under what circumstances it would be able to appoint private counsel: ". . . Or in a case in which there is a conflict between two defendants, for instance, you are not together and you are telling different stories, and you have a conflict of interest between yourselves, then in that case I can, and frequently do, appoint a separate attorney for one of the defendants, and the Public Defender then represents the other.

"That is where there is a conflict, where a Public Defender, in the mind of the Court, couldn't fairly represent both of them, because your stories are different and you are fighting each other, among yourselves, then you are by law entitled, in that kind of circumstances, one of you is entitled to private counsel, and I would appoint private counsel, if that was indicated to me, and it was justified."

The court did offer to try to arrange with the public defender's office to have two deputies represent the two defendants so that they would feel that they had the full attention of an attorney. This offer, too, was declined by defendant. Johnston wanted some time to think it over. The matter remained on the calendar for trial on October 7.

On October 7, again before Judge Miller, defendant had not changed his mind but Johnston had. The case was then continued for trial to October 28 "in this court."

. On October 28, the matter was transferred for trial to what appears to have been Judge Spencer's regular department. Johnston was represented by a deputy public defender. Defendant again moved for the appointment of private counsel. He stated: "It is conflict of interest between the defendant [*sic*] and myself. The Defender cannot give me his undivided

attention in this case and I request a State Bar Counsel appointed by the Court to be in the best interest of the defendant." His motion was denied. He then orally moved to disqualify Judge Spencer. That motion was denied on the ground that it should have been made in Judge Miller's department, at the time the case was assigned to Judge Spencer. The trial then proceeded.

At the conclusion of the prosecutor's opening statement Johnston discharged the public defender because, as he put it, "He just ain't no good." From then on defendant and Johnston again proceeded in lockstep. They declined to cross-examine witnesses, to present any evidence on their own behalf[3] or to address the jury after the prosecutor had presented his argument.

At the close of the case, after the jury was dismissed the court made the following statement: ". . . I want to make this statement for the record. It appears to the Court that the tactics of the defendants in this case with respect to their refusal of the aid and assistance of the Public Defender when proffered by the Court on more than one occasion; their refusal to participate in any way in the defense of themselves against these serious charges, were not and could not be in good faith.

"It is very clear from the statement made by Mr. Hill at the commencement of these proceedings, and again this morning when the Court wanted to be sure that the record clearly expressed the views that he had expressed in open court, show conclusively that Mr. Hill has sufficient ability to conduct his own defense, and that he framed his defense in the hope—a vain one, the Court trusts—that he could bring the fact situation within the limits of certain recent decisions of our Supreme Court.

"The Court is also satisfied that the defendant Johnston had the ability to undertake his own defense if he so chose; he had an understanding of the nature of these proceedings, and what he could expect. If either defendant had undertaken to

---

[3]It is unfortunate that at the close of the People's case the court asked defendant in the presence of the jury whether he desired to testify. We hold, however, that any error was harmless beyond a reasonable doubt. (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].) It is also noted that the court gave, *sua sponte*, an instruction much like the one found to be correct in *People* v. *Brown*, 253 Cal.App.2d 820, 830 [61 Cal.Rptr. 368]. *Brown* has been criticized. (*People* v. *Mason*, 259 Cal.App.2d 30, 40-41 [66 Cal.Rptr. 601].) Conflicting appellant opinions on the problem were gathered in *People* v. *Hernandez*, 264 Cal.App.2d 206, 208-212 [70 Cal.Rptr. 330].) Whoever is correct, we have no reasonable doubt that the instruction did not contribute to the result.

do what the Court believes they were capable of doing, even without counsel, the Court might have been in a better position to assist them during the course of the trial within the very narrow limits that the Court might properly do so while sitting as a Judge in the proceedings, to insure that every possible favorable fact which was known to them would be presented to the jury. But by their conduct, which the Court is satisfied was wilfully designed to meet the criteria of the cases to which I have referred, they deprived the Court of this opportunity.

''Not only that, the record does not reflect and cannot, unfortunately, the insolent and contemptuous conduct of the defendant Hill in particular. With respect to the defendant Johnston, it is the Court's point of view that his conduct in the courtroom was motivated by ignorance of what would be proper, and ignorance as to the proper respect which should be paid to the Court and to all others who participate in a trial of this nature. If these defendants think that they have pulled the wool over the Court's eyes by their conduct, they are very much mistaken. . . .''

Defendant was sentenced to consecutive prison terms on the counts on which he was convicted.

### Alleged Insufficiency of Waiver of Counsel

█ A possible defect in the proceedings arises out of the defendant's apparent claim, set forth earlier in this opinion, that there was a conflict of interest between ''the defendant'' and himself. We assume, for the purpose of this decision, that if a defendant who is jointly charged with another claims a conflict between him and his codefendant, the court should appoint different counsel, at least for the purpose of presenting the problem of the conflict to the court. At least one of these different counsel would have to come from an office other than that of the public defender. Fortunately, however, the record made on the second day of trial clarifies defendant's claim of a conflict and shows that the asserted conflict was not with his codefendant Johnston, but with the public defender.[4]

---

[4]It is not claimed on appeal that there was a conflict between defendant and Johnston. Hindsight shows that the People's case against Johnston was the stronger of the two. No eyewitness connected Hill with any of the three robberies. On the other hand, the victim of count III saw Johnston about seven feet away when he was struck by someone else. Further, an off-duty officer identified Johnston at the scene immediately after the attack on the victim of count IV. He could not identify Johnston's companion. However Johnston and Hill were seen driving together a few blocks away immediately after the robbery involved in count IV,

On that day, at the outset of the proceedings, the court requested defendant to restate the motion he had made the day before. Among other matters, the following occurred: "THE COURT: I think you have cited some cases and other things—just repeat your motion as you made it yesterday, please. I'm aware of the sense of the motion. DEFENDANT HILL: The Defender is an employee of the State with the dignity of the State behind him, *Brubaker* vs. *Dixon*, 310 Fed.2d, Penal Code [Government Code] annotation 27700 and 27711. Moreover there is a conflict of interest between the Defender and myself. The Defender cannot give me— THE COURT: Are you referring now to the defendant Johnston? DEFENDANT HILL: The Public Defender. The Defender. THE COURT: All right. It's sounded like 'defendant' up here. DEFENDANT HILL: No, the Defender cannot give me undivided attention because of his case load, see *Gideon* v. *Wainwright*. Counsel appointed by the Court should be in the best interest of the defendant, *Glazer* vs. *United States*, 316 United States, especially as here in a capital offense; see *Douglas* vs. *California*, 372 United States. And I would like the Court—I would like for the record to show that the Court denied all of my motions."

It is thus clear that we need not concern ourselves with what the court should have done had defendant claimed a conflict between himself and his codefendant Johnston.

 It is well settled that defendant's refusal to be represented by the public defender did not entitle him to the appointment of private counsel. (*People* v. *Ruiz*, 263 Cal.App. 2d 216, 220-221 [69 Cal.Rptr. 473]; *People* v. *Hernandez*, 209 Cal.App.2d 33, 37-38 [25 Cal.Rptr. 640].)

It is true that in *In re James*, 38 Cal.2d 302, 313 [240 P.2d 596] the Supreme Court states: "Moreover, the court cannot accept a waiver of counsel from anyone accused of a serious

Hill's prints were found on the automobiles taken from the victims of counts III and IV and on a clawhammer taken from the victim of count II.

Our Supreme Court has recently reaffirmed the rule that a heavier involvement of one defendant in the crime charged demands appointment of separate counsel. (*People* v. *Chacon*, 69 Cal.2d 765 [73 Cal. Rptr. 10, 447 P.2d 106]; see also *People* v. *Keesee*, 250 Cal.App.2d 794 [58 Cal.Rptr. 780]; *People* v. *Donohoe*, 200 Cal.App.2d 17, 28 [19 Cal.Rptr. 454].) If the case against Johnston was so much stronger than the one against Hill that he would have been entitled to separate counsel, Hill only has himself to blame for the court's failure to appoint two attorneys. He was advised that in the event of a conflict separate counsel would be appointed. It is, perhaps, too much to expect a layman to see that there was a potential conflict in the situation, but it was Hill's stubborn refusal to have anything to do with the public defender which deprived him of expert assistance on that problem.

public offense without first determining that he 'understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted.' (*People* v. *Chesser,* 29 Cal.2d 815, 822 [178 P.2d 761] ; *Uveges* v. *Pennsylvania,* 335 U.S. 437, 440-441 [93 L.Ed. 127, 131-132, 69 S.Ct. 184].) There was no attempt to make such a determination in this case. The record shows that defendant was an itinerant farm hand, without formal education, without money, and evidently without previous experience with courts.''

Here the dictate of *James* was not literally complied with. Yet it does not appear that such exact compliance is always necessary. The Supreme Court itself appears to employ a case by case approach, determining from the background, experience and conduct of the accused whether the waiver of counsel has been intelligently made. There was no strict compliance with *James* in *In re Fresquez,* 67 Cal.2d 626, 630-633 [63 Cal.Rptr. 271, 432 P.2d 959], yet the court found that the waiver of counsel was free and intelligent.

We do not hesitate to reach a similar conclusion in the present case. The crimes of which defendant stood accused, though serious, were simple. Defendant was advised of the serious consequences of conviction. Although he disclaimed any legal knowledge, the record shows the opposite. As the various colloquies between the court and defendant illustrate, defendant had access to legal materials and the know-how to use them. Several times he refused the only attorney the court had statutory authority to appoint. (Pen. Code, § 987a.) One cannot read the proceedings below without coming to precisely the same conclusion as the trial judge, namely that, lacking any defense on the merits, defendant was simply playing a game with the court by being as awkward and difficult as possible, hoping for a reversal on some technical ground.

### Disqualification Of Trial Judge

We take judicial notice of the fact that Department Southwest B of the Los Angeles County Superior Court was the criminal master calendar department for the Southwest District of the court. Section 170.6 of the Code of Civil Procedure provides in part: ''. . . If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. . . .'' The motion to disqualify Judge Spencer should have been made before

Judge Miller and, in any event, should have been supported by an affidavit or declaration or "oral statement under oath." (Code Civ. Proc., § 170.6, subd. (2).)

On appeal the argument is that since defendant was not represented by counsel the court should not have insisted on strict compliance with section 170.6. For obvious reasons, based on the entire record, we have no sympathy with that argument.

The Attorney General raises the possibility of a reviewable issue in connection with certain statements made by defendant at the time of his arrest. He argues, however, that there was no error. We have examined the record and we agree.

### The Finding That Defendant Was Armed

The Attorney General draws our attention to an error in sentencing. The robberies charged in counts III and IV were found to be robberies in the first degree because the defendant was armed.

The recital in the judgment that defendant was armed must therefore be stricken.

It is therefore ordered that the judgment be modified by striking therefrom the recital that the allegation of being armed had been found true as to counts III and IV. In all other respects the judgment is affirmed.

Stephens, J, and Aiso, J., concurred.