43 Cal.App.3d 447 (1974)
117 Cal. Rptr. 799
In re J.G.L. III et al., Persons Coming Under the Juvenile Court Law.
PHILLIP L. WESSON, Plaintiff and Appellant,
v.
THE SUPERIOR COURT OF ORANGE COUNTY, Defendant and Respondent.
Docket No. 13766.
Court of Appeals of California, Fourth District, Division Two.
November 25, 1974.
*448 COUNSEL
Phillip L. Wesson, in pro. per., for Plaintiff and Appellant.
Adrian Kuyper, County Counsel, and Edward N. Duran, Deputy County Counsel, for Defendant and Respondent.
OPINION
GARDNER, P.J.
Mrs. L., an indigent, is the mother of two children on whose behalf a petition under Welfare and Institutions Code section 600 was filed. Mrs. L. refused the services of all deputies in the public defender's office assigned to the juvenile court. The court then appointed *449 Mr. Wesson to represent her but did not commit the court as to payment of any attorney's fees in view of the lack of a conflict. Nevertheless, Mr. Wesson proceeded to represent Mrs. L. and thereafter petitioned the court for fees. His petition was denied and he appeals.
In order to bring this matter into proper focus, some background as to the Juvenile Court Law and the law respecting the appointment of the public defender to represent indigent litigants is necessary. Each has had a checkered career but to avoid an interminable law review article format, this background will be discussed in very general terms.
Prior to 1961, the California Juvenile Court Law was "pure" juvenile court law embracing wholeheartedly the parens patriae philosophy with an almost complete disregard of the constitutional rights of those who appeared in that court. Enacted originally in 1903, it was a hodge-podge of amendments and amendments to amendments. Thus in 1957, the Governor appointed a commission to survey and evaluate the administration of juvenile justice in this state. In 1960, that commission reported its recommendations which were adopted almost in their entirety by the Legislature in the Juvenile Court Law of 1961. Under that law certain constitutional rights of the parties in the juvenile court were recognized. Insofar as the right to counsel was concerned, an effort to reconcile the parens patriae philosophy of the juvenile court with full recognition of the constitutional right to counsel of those appearing in that court resulted in a somewhat hybrid procedure which is now of interest only to legal historians. However, under the impetus of Kent v. United States (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], and In re Gault (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], the 1961 law was amended from time to time until at present the right to counsel is covered by two sections of the Welfare and Institutions Code sections 634 and 517.
Section 634 reads: "When it appears to the court that the minor or his parent or guardian desires counsel but is unable to afford and cannot for that reason employ counsel, the court may appoint counsel. In a case in which the minor is alleged to be a person described in Section 601 or 602,[[1]] the court shall appoint counsel for the minor if he appears at the *450 hearing without counsel, whether he is unable to afford counsel or not, unless there is an intelligent waiver of the right of counsel by the minor; and, in the absence of such waiver, if the parent or guardian does not furnish counsel and the court determines that the parent or guardian has the ability to pay for counsel, the court shall appoint counsel at the expense of the parent or guardian. In any case in which it appears to the court that there is such a conflict of interest between a parent or guardian and child that one attorney could not properly represent both, the court shall appoint counsel, in addition to counsel already employed by a parent or guardian or appointed by the court to represent the minor or parent or guardian. In a county where there is no public defender the court may fix the compensation to be paid by the county for service of such appointed counsel." (Italics added.)
Section 517 reads: "In any case in which, pursuant to this chapter, the court appoints counsel to represent any person who desires but is unable to employ counsel, counsel shall receive a reasonable sum for compensation and for necessary expenses, the amount of which shall be determined by the court, to be paid out of the general fund of the county."
We now leave the Juvenile Court Law and examine the law pertaining to the office of the public defender. While statutory authority for the creation of this office in all counties has existed since 1921, the existence of such offices in the various counties depends on the size of the county involved. Obviously, many small counties are hardly in a position to maintain a public defender, whereas, such an office is one of long duration *451 in larger counties.[2] In Orange County, the public defender's office was created on a part time basis shortly before World War II and shortly after that war became a full-fledged operation.
During the years following the 1961 Juvenile Court Law there was no provision for the appointment of a public defender in that court. Thus, during those years it became necessary for the judges in those courts to avail themselves of the services of private attorneys to represent children and/or parents in that court. In Orange County a panel of dedicated and volunteer attorneys was created for that purpose and the members were paid modest sums for their services. Then, in 1971, Government Code section 27706, subdivision (e), was amended to provide that the public defender, upon order of the court, was to represent any person who was entitled to be represented by counsel in juvenile court proceedings. The public defender now has a staff of attorneys at the Orange County Juvenile Court, and, in addition, there still exists a panel of private attorneys who make their services available to the juvenile court in conflict cases. Because of the very nature of juvenile court proceedings conflicts occur with frequency  particularly between parent and child.
It is at this point in the discussion that Penal Code section 987.2 comes into the picture. This is a section under which private attorneys are appointed in those counties which enjoy the services of the office of a public defender. While limited in its language to criminal proceedings, it does represent a firm legislative policy that the public defender shall be used unless for good reason he refuses to represent the individual involved. It provides in pertinent part that in those counties in which there is a public defender, private counsel is to be appointed only in those cases "... in which the court finds that because of conflict of interest or other reasons the public defender has properly refused to represent the person accused...." Following this principle a line of authority has developed to the effect that a defendant does not have the right to any particular attorney, that his refusal to be represented by a public defender does not entitle him to the appointment of private counsel and that a difference of opinion by the public defender and his client does not entitle the client to the appointment of private counsel. (People v. Hughes, 57 Cal.2d 89 [17 Cal. Rptr. 617, 367 P.2d 33]; People v. Fitzgerald, 29 Cal. App.3d 296 [105 Cal. Rptr. 458]; People v. Hill, 268 Cal. App.2d 504 [74 Cal. Rptr. 180]; People v. Ruiz, 263 Cal. App.2d 216 [69 Cal. Rptr. 473]; People v. Taylor, 259 Cal. App.2d 448 [66 Cal. Rptr. 514]; People *452 v. Hernandez, 209 Cal. App.2d 33 [25 Cal. Rptr. 640]; People v. Mitchell, 185 Cal. App.2d 507 [8 Cal. Rptr. 319]; People v. Williams, 174 Cal. App.2d 364 [345 P.2d 47] (cert. den., 363 U.S. 807 [4 L.Ed.2d 1150, 80 S.Ct. 1244].) The necessity for such a rule is obvious. Any other holding would reduce the criminal calendar to a shambles and virtually abolish the office of the public defender. For some mysterious reason a large percentage of those charged with criminal offenses will reject the services of a highly trained, completely competent public defender and be happy with the appointment of a private attorney of marginal or doubtful ability. Apparently, this has something to do with a deep distrust of the "establishment" and since the public defender is supported by the taxpayer, he is suspect even though that office furnishes to those charged with crime highly competent legal services with no cost to the individual involved.
(1a) Thus, it is clear that the public policy of this state is that an individual has no right to have counsel appointed and paid for simply because he does not want the services of the public defender and that before the taxpayer has to foot the bill for the services of a private attorney the court must find that for a proper reason the public defender has refused to represent that person.
Returning to the instant case, Welfare and Institutions Code section 517, provides that if the court appoints counsel, that attorney shall be entitled to a reasonable sum for compensation. Welfare and Institutions Code section 634 provides that in a county in which there is no public defender the court may fix the compensation to be paid for the services of such appointed counsel. It would appear that if a county does have a public defender the court should look to Penal Code section 987.2 for guidance as to the appointment and payment of private counsel. That section, as indicated, provides that such appointment and payment should only take place where because of a conflict of interest or other reason the public defender has properly refused to represent the person accused. (2) While the language of Penal Code section 987.2 refers to criminal matters, it does represent the clear public policy of this state and should apply to proceedings in the juvenile court.
It would be a misuse of the judicial process and an intolerable drain on the public purse to allow those in either the adult or the juvenile court to simply refuse the services of the public defender and thus secure private counsel paid for by the taxpayers. Society's obligations to the indigent litigant have not reached that stage yet. (1b) Therefore, we hold that in those counties in which there is a public defender, that Welfare and Institutions Code sections 634 and 517, authorize the appointment and *453 compensation of private counsel for persons financially unable to employ counsel only after the public defender has refused to represent them.
Mrs. L. refused to accept the services of the public defender. The public defender did not refuse to represent her. Under these circumstances, the court had, in the first place, no authority to appoint counsel and thereafter had no jurisdiction to pay that attorney.
Judgment affirmed.
Whyte, J.,[*] and Tamura, J., concurred.
NOTES
[1] An interesting question presents itself as to whether a parent or child in a Welfare and Institutions Code section 600 case is entitled to appointed counsel. On the ground that Welfare and Institutions Code section 600 proceedings are "true civil causes," In re Robinson (1970) 8 Cal. App.3d 783 [87 Cal. Rptr. 678] (cert. den. sub. nom. Kaufman v. Carter, 402 U.S. 964 [29 L.Ed.2d 128, 91 S.Ct. 1624]), held that there was no constitutional requirement for appointed counsel. In re Joseph T. (1972) 25 Cal. App.3d 120 [101 Cal. Rptr. 606], followed Robinson, but In re Rodriguez (1973) 34 Cal. App.3d 510 [110 Cal. Rptr. 56], held that an indigent father would have such a right in a Civil Code section 232, subdivision (d), case after the child had been previously declared to be a dependent child. Then along came In re Simeth (1974) 40 Cal. App.3d 982 [115 Cal. Rptr. 617], which held that an indigent parent was entitled to appointed counsel in an appeal from an adverse ruling in a Welfare and Institutions Code section 600 proceeding. However, Simeth limits its holding to the right of an indigent person to have counsel appointed for the purposes of appeal. Nevertheless, Simeth obviously casts doubt on the continued validity of Robinson and Joseph T.

Under any circumstances, even if Simeth were interpreted to require appointment of counsel in all Welfare and Institutions Code section 600 proceedings involving indigents, this requirement was met by the efforts of the court to appoint the public defender as counsel for Mrs. L. Rather obviously, these efforts must be construed as substantial compliance with the constitutional requirement for appointment of counsel. Mrs. L. apparently was somewhat difficult because, as Mr. Wesson observed, when he was assigned "she had fired all the public defenders," and "she did not want any of the public defenders. I guess she had gone through all of them." Therefore, we need not pass on the question of the right of Mrs. L. to counsel. We limit ourselves to the purely fiscal problem of payment of counsel who eventually represented her.
[2] Los Angeles County as a charter county had created the office of the public defender in 1914.
[*] Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.