[Crim. No. 1564. First Appellate District, Division One.—September 29, 1930.]

THE PEOPLE, Respondent, v. FRANCIS LEE, Appellant.

F. W. Sawyer and Marlowe Bumpus for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The appellant Francis Lee entered a plea of not guilty by reason of insanity to a charge of grand theft, stealing an automobile, and upon trial before a jury was found to be sane at the time of the commission of the act constituting the crime. Thereafter a motion for new trial was made and denied, and he was sentenced to imprisonment in the state prison. This appeal was then taken from the judgment and the order denying his motion for a new trial.

In support of his plea and as part of his case, he offered in evidence a petition for the appointment of a guardian, filed in the superior court in 1925, "in the matter of the guardianship of Francis E. Lee, incompetent", together with the order appointing guardian and the letters of guardianship, all of which the court excluded, upon the objection of the People. The ruling is assigned as error. None of the excluded papers were made part of the record on appeal, however, and for aught we can say the guardianship proceeding may have been based upon some of the

bodily ailments or weaknesses mentioned in section 1767 of the Code of Civil Procedure, which defines the word ''incompetent'', and not upon a charge that appellant was insane.

The theft of the automobile took place on July 2, 1929, and appellant introduced in evidence the judgment-rolls of two proceedings had in the superior courts of two different counties, pursuant to chapter I, title V, part III, of the Political Code, showing that in 1924 appellant was adjudged insane and committed to the state hospital at Agnews; and that in 1928 he was again adjudged insane and committed to the state hospital at Ukiah. The trial court received in evidence the judgments of insanity and commitments to the state hospital, in each proceeding, but excluded the other documents upon which those judgments and commitments were based, namely, the petitions for the commitments and the certificates of the doctors who conducted the examination as to appellant's mental condition. There was no error in so doing, because those documents contained nothing more than opinions, conclusions and *ex parte* statements of the doctors and others, which at best constituted hearsay evidence.

Two alienists, appointed by the court, were permitted to give their opinions as to the sanity of appellant at the time he committed the crime; and appellant contends that such testimony should have been confined to his mental condition at the time of the present trial. There is no merit in the point for the reason that the sole issue to be tried under a plea of not guilty by reason of insanity (Pen. Code, sec. 1026) is the sanity of the accused at the time of the commission of the act constituting the crime; and the very purpose of allowing the court to appoint alienists pursuant to the provisions of section 1027 of said code is to aid and assist the court and jury in the determination of that issue. True, the mental condition of the accused at the time of trial may be taken into consideration in establishing his mental condition at the time of the commission of the act, but, as stated, it is the question of his sanity at the time the act is committed that is controlling.

Counsel for appellant made the opening argument and the district attorney then argued on behalf of the People. Appellant now contends that it was his right to reply.

This may be conceded, but at the close of the district attorney's argument he made no such request, at least so far as the record discloses. True, at the conclusion of the evidence counsel for appellant did state: "The defendant, I suppose, has the opening and closing argument," and the court replied: "You each have one argument. You have the opening and the prosecution has the closing argument"; and this was the order followed. Nevertheless, if at the close of the district attorney's argument appellant desired to make a reply we think that before he can fairly claim that he was deprived of such right he should have asked permission so to do.

█ The instruction given by the court expounding the law of insanity and of which appellant complains, is the one universally approved except the single sentence contained therein directed against the simulation of insanity as a defense; and while that portion of the instruction too has been approved in many cases, it has been criticised in others. But, as pointed out in *People* v. *Sloper,* 198 Cal. 238 [244 Pac. 362], no case has ever been reversed on account of the giving of it; and although given in the case just cited, the judgment of conviction was not disturbed, notwithstanding that the penalty of death was imposed.

█ Nor do we find any error in the refusal of the trial court to give the instructions proposed by appellant. The subject matter of the first, second, third, sixth, seventh, eight and eleventh was substantially covered in the court's charge; █ and the fourth, fifth, ninth and tenth, if given, would doubtless have conveyed the impression that because of the former adjudications as to appellant's insanity and of his commitment to an asylum for the insane twice, the jury in the present case was bound to find a continuation of such mental condition and therefore find that he was insane at the time of the commission of the act in question here. Such, however, is not the law, for, as held in *People* v. *Perry,* 99 Cal. App. 90 [277 Pac. 1080], a former adjudication that a person is insane is in no way decisive of the question of the sanity of such person at the time he is alleged to have committed another and distinct crime; but that in the latter case he must prove also by a preponderance of the evidence, before he is entitled to a verdict, that he was mentally deranged to the extent of

614

being incapable of distinguishing between right and wrong in relation to the acts constituting that particular crime. In the present case appellant introduced no evidence to establish that fact. ■ On the contrary, it was shown that shortly after his commitment to the Ukiah state hospital he told the attending doctors that he had been sent there by his sister because he had been stealing automobiles; that he had a long record of stealing automobiles in Los Angeles and Oakland; that he stole them because he wanted money and that finally he was caught and was "double-crossed" by those operating with him; and later, in October, 1928, he declared that he "never was crazy".

The foregoing evidence is legally sufficient in our opinion to sustain the verdict. The judgment and order are, therefore, affirmed.

Tyler, P. J., and Cashin, J., concurred.