[Crim. No. 10519.   In Bank.   Nov. 7, 1967.]

In re ROBERT V. FRESQUEZ on Habeas Corpus.

Friedman & Cone, Mark S. Novak and Henry Friedman for Petitioner.

Thomas C. Lynch, Attorney General, William E. James and Doris H. Maier, Assistant Attorneys General, James H. Kline and Jack R. Winkler, Deputy Attorneys General, for Respondent.

BURKE, J.—In 1962 Robert V. Fresquez, who was not represented by counsel, pleaded guilty to four counts of an indictment charging unlawful sale of marijuana (Health & Saf. Code, § 11531) and was sentenced to prison on each count, the terms to run consecutively. He did not appeal.

In 1966 attorneys for Fresquez, now an inmate at the California Men's Colony, filed the instant habeas corpus petition, asserting that he did not effectively waive his right to counsel in the trial court and that his guilty pleas were induced by promises of District Attorney C. Keith Lyde, Sheriff Lawrence Gillick, and Police Chief Wesley Barrett that he would receive concurrent prison sentences if he pleaded guilty. We issued an order to show cause and subsequently appointed the Honorable William A. White, Judge of the Superior Court, County of Sacramento, to take evidence and make findings relating to the following questions:

1. Did Fresquez intelligently and understandingly waive his right to the assistance of counsel in the trial court in People v. Fresquez, Butte County Superior Court No. 38513?

2. Were his pleas of guilty in that case the product of promises of leniency made by Butte County District Attorney C. Keith Lyde or by any law enforcement officer?

Following an evidentiary hearing the referee determined that Fresquez effectively waived his right to counsel in the

trial court and that his pleas of guilty were not the product of promises of leniency. Petitioner has filed objections to the report.

1. *Whether there was an effective waiver of Fresquez's right to counsel.*

A person accused of a felony, of course, has the right to the assistance of counsel in the trial court. (*Gideon* v. *Wainwright,* 372 U.S. 335, 336 et seq. [9 L.Ed.2d 799, 800, 83 S.Ct. 792, 93 A.L.R.2d 733]; Cal. Const., art. I, § 13; Pen. Code, § 686.) Several statutory provisions implement this right. The Penal Code requires that the trial court inform an accused of his right to counsel when he is arraigned before the trial court (Pen. Code, § 987) and before accepting a guilty plea (Pen. Code, § 1018). In order to fully apprise the accused of that right, the trial court should inform him not only that he has a right to counsel but also that the court will appoint an attorney to represent him without cost to him if he is indigent. (Cf. *Miranda* v. *Arizona,* 384 U.S. 436, 473 [16 L.Ed.2d 694, 722, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *In re Smiley,* 66 Cal.2d 606, 614-615 [58 Cal.Rptr. 579, 427 P.2d 179].)

The right of an accused to counsel may be waived. (*Johnson* v. *Zerbst,* 304 U.S. 458, 465 [82 L.Ed. 1461, 1467, 58 S.Ct. 1019, 146 A.L.R. 357]; see *Escobedo* v. *Illinois,* 378 U.S. 478, 490, fn. 14 [12 L.Ed.2d 977, 985, 84 S.Ct. 1758]; *In re Berry,* 43 Cal.2d 838, 846 [279 P.2d 18].) " '[A] finding of waiver is not lightly to be made' " (*People* v. *Douglas,* 61 Cal.2d 430, 434 [38 Cal.Rptr. 884, 392 P.2d 964]) and "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege" (*Johnson* v. *Zerbst, supra,* 304 U.S. at p. 464 [12 L.Ed.2d at p. 1466]; see also *Carnley* v. *Cochran,* 369 U.S. 506, 515 [8 L.Ed.2d 70, 76, 82 S.Ct. 844]).

"The determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (*Johnson* v. *Zerbst, supra,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357]; *In re Woods,* 64 Cal.2d 3, 8 [48 Cal.Rptr. 689, 409 P.2d 913]; *In re Luce,* 64 Cal.2d 11, 14 [48 Cal.Rptr. 694, 409 P.2d 918]; *In re*

*Johnson,* 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420] ; *People* v. *Chesser,* 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 246].) ██ " ' "[T]he court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he 'understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted [quoting from *In re James* (1952) 38 Cal.2d 302, 313 [240 P.2d 596]].' " ' " (*People* v. *Carter,* 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214] ; *In re Johnson, supra,* 62 Cal.2d 325, 335.) ██ The scope of the inquiry will, of course, vary according to the seriousness of the crime charged, and the trial judge is not required to demand that a defendant, as a prerequisite to representing himself, demonstrate either the acumen or the learning of an attorney. (*People* v. *Carter, supra,* at p. 673; *People* v. *Linden,* 52 Cal.2d 1, 17 [338 P.2d 397].)

Here from the evidence introduced at the hearing before the referee it appears that Fresquez was arraigned on the charges in question in the Butte County Superior Court on June 18, 1962. The minutes of the court recite, "Defendant is informed of legal right to counsel and waives the right." The reporter's transcript shows the following colloquy :

"THE COURT: I hand you a copy of the indictment, Mr. Fresquez. You are entitled to the benefit of legal counsel at all stages of the proceedings. Do you want an attorney?

"THE DEFENDANT : I can't afford one—no, I can't afford one at all, no.

"THE COURT: If you want one I would have to appoint one for you.

"THE DEFENDANT : No, I don't.

"THE COURT: You don't want one?

"THE DEFENDANT : No.

"THE COURT: All right. Are you prepared to enter a plea to the charges at this time?

"THE DEFENDANT : Yes."

After the quoted colloquy Fresquez pleaded guilty to the charges. On July 3, 1962, he again appeared without counsel, probation was denied, and he was sentenced to consecutive prison terms for the offenses.

Fresquez testified that the judge did not tell him he had the right to an attorney appointed by the court *at the expense of the state,* that he was then indigent and thought he would have to pay for an attorney appointed to represent him, and

that it was not until October 1965 (i.e., over three years after the proceedings in question) that he first understood from correspondence with his present counsel that the trial court meant ''free appointed counsel.''

██ Although the trial court's statements were ambiguous, they could reasonably have been understood as an offer to furnish counsel without charge, especially in light of the context in which they were made. Relevant to the question whether they were in fact so understood by Fresquez is evidence that at the time of his arraignment he was not an inexperienced youth, unfamiliar with courts and legal procedure. He was then a 27-year-old construction worker who had attended school through about the eleventh grade. He had previously been convicted in Los Angeles County of several misdemeanors, and in some of those proceedings had been represented by a deputy public defender. In 1954, when represented by a deputy public defender, he was placed on probation by the Los Angeles Superior Court following his conviction of grand theft; in 1957 his probation was revoked, and he was sentenced to 360 days in the county jail. In 1957, when represented by private counsel, he was found guilty in the Los Angeles Superior Court of possession of marijuana and was sentenced to 360 days in the county jail, the term to run concurrently with his other sentence. In 1959, when represented by a deputy public defender, he pleaded guilty in the Los Angeles Superior Court to grand theft and was sentenced to six months in the county jail. In 1960 he was arrested for possession of narcotics.

Fresquez testified that in 1962 he did not know whether Butte County had a public defender. However, in view of his past experience, it may be inferred that he was at least aware of the possibility that Butte County had a public defender or the equivalent.[1]

It further appears from the June 18 reporter's transcript that Fresquez was the first defendant arraigned that day; that after his arraignment 10 other defendants were arraigned or questioned by the court; that the court advised them of their right to counsel, appointed counsel for some after asking questions which revealed their lack of resources, and told one who had assets to obtain her own attorney. Fresquez admitted that he was present when numerous other defendants were

---

[1]According to the referee's report, ''The County of Butte does not have a Public Defender, but the policy of the Superior Court of that county has been and is to appoint counsel to represent . . . the indigent.''

arraigned and that he and the other defendants stood in front of the judge, who talked to them one by one, but Fresquez stated that he did not recall any of the discussion of the judge with the other defendants or the judge appointing counsel for any of them. However, since he admittedly was present, it may be inferred that he was aware of what transpired, and his failure thereafter to inform the court that he too desired counsel suggests that he previously was aware that court-appointed counsel would not charge him.

It also appears that concern over paying an attorney's fee did not deter Fresquez from accepting a court-appointed attorney upon his arraignment in the Butte County Superior Court on a conspiracy charge on July 3, 1962 (the same date he was sentenced for the offenses here in question). The minutes of the court for the July 3 arraignment on the conspiracy charge recite, "Defendant is informed of his legal right to counsel, has no funds, and requests counsel." The reporter's transcript of that arraignment shows that the trial judge (who was the same judge who presided at the June 18 arraignment) stated, "You have been informed of your legal rights when you were before this Court on the previous arraignment, again, do you want an attorney? THE DEFENDANT: This is the conspiracy? THE COURT: This charge is the conspiracy. THE DEFENDANT: Yes, Your Honor, I want an attorney." The court then appointed an attorney to represent Fresquez and continued the arraignment until a later date. Fresquez testified that he did not recall requesting an attorney in the conspiracy proceeding. He stated he became ill and vomited when the consecutive sentences were imposed for sale of marijuana, and it may be inferred that those sentences were imposed before the conspiracy proceeding held that same day. It appears from the transcript of the conspiracy proceeding, however, that Fresquez gave responsive answers to the court's questions and apparently was aware of what was occurring.

Fresquez also testified that at his June 18 arraignment he did not know "what the possible alternatives of sentencing were" and did not recall the chief of police or anyone advising him "about penalties." He admitted that before the June 18 arraignment he knew what the charges were. Police Chief Barrett testified that two days before the arraignment he told Fresquez of the penalties for the offenses, i.e., five years to life on each count. However, an affidavit by Police Chief Barrett declares that "no promises or statements were made by

undersigned . . . at any time relative to punishment, sentences or disposition of the charges against ROBERT FRESQUEZ, and the matters were not even mentioned at this conversation [i.e. the one two days before the arraignment]," and the chief of police was not asked to explain his prior statement. Even if the chief of police had not informed Fresquez of the penalties, it may be inferred from the recited evidence, including the proof of his prior criminal record, that he had some knowledge of matters such as the penalty for sale of marijuana.

We are satisfied that the record furnishes a substantial basis for the referee's determination that Fresquez freely and intelligently waived his right to counsel at his June 18 arraignment.

■ Petitioner further asserts that the trial court erred in accepting his guilty pleas without making the required finding that "defendant understands his right to counsel and freely waives it" (see Pen. Code, § 1018). The record does not show that the trial court expressly so found, nor does it appear under the circumstances of this case that such a finding can be implied. (Cf. *In re Martinez,* 52 Cal.2d 808, 814 [345 P.2d 449]; *People* v. *Ector,* 231 Cal.App.2d 619, 624 [42 Cal.Rptr. 388].)[2] Here, as in *Martinez,* it does not appear that the trial court made a sufficient inquiry to discover whether Fresquez had the experience and mental capacity to understand his rights or whether his decision was the result of an intelligent choice freely made by him or of improper influences theretofore brought to bear upon him. However, *Martinez* concluded that the procedural error did not warrant habeas corpus relief since it did not result in any deprivation of the right to counsel. The same is true here.

■ Petitioner next contends that when he was sentenced on July 3, 1962, he was not informed of his right to counsel and did not waive it. However, as we have seen, at his June 18 arraignment the court advised him of his right to counsel "at all stages of the proceedings" and Fresquez stated that he did not want an attorney. The Penal Code contains no provision requiring that at the time of sentence the defendant

[2]*People* v. *Navarro,* 243 Cal.App.2d 755, 760 [52 Cal.Rptr. 686], cited by the Attorney General, differs from the instant case. *Navarro* indicated that under the circumstances there present the finding required by Penal Code section 1018 could be implied. However, in that case it appeared that the trial court had questioned the defendant and covered "the necessary areas of inquiry," whereas in the present case it does not appear that the trial court did so.

again be informed of his right to counsel. A proper instruction given in the manner required by statute is normally adequate to insure the preservation of a defendant's constitutional rights. (See *In re Turrieta,* 54 Cal.2d 816, 821 [8 Cal.Rptr. 737, 356 P.2d 681].) Generally when a defendant has waived his right to counsel the burden is on him to take some affirmative action to reinstate his right thereto. (*In re Grayson,* 242 Cal.App.2d 110, 114 [51 Cal.Rptr. 145] ; *People* v. *Collins,* 220 Cal.App.2d 563, 574 [33 Cal.Rptr. 638] ; see *In re Turrieta, supra,* 54 Cal.2d at p. 821.) Here it does not appear that Fresquez took such action.

■ The referee's determination that Fresquez intelligently and understandingly waived his right to counsel in the trial court, although not binding upon this court, is entitled to great weight (*In re Lokey,* 64 Cal.2d 626, 631 [51 Cal.Rptr. 266, 414 P.2d 394] ; *In re Sciterle,* 61 Cal.2d 651, 657 [39 Cal.Rptr. 716, 394 P.2d 556] ; *In re Martinez, supra,* 52 Cal.2d 808, 812), and we adopt it.

2. *Whether defendant's pleas of guilty were the product of promises of leniency.*

■ At the hearing Fresquez conceded that neither Sheriff Gillick nor Police Chief Barrett promised that his sentences would run concurrently. He testified that, "I felt that it was possible, from what they had told me ; but there was no promise made—but I was hopeful." With respect to the alleged promise by District Attorney Lyde, Fresquez testified that he asked whether if he pleaded guilty the district attorney would reduce the bail for Fresquez's wife and "run these sentences concurrently" and that, although he did not recall the district attorney's exact words, they were to the effect, "It is very possible, yes, we can do this." He stated it was his impression from the district attorney's response that the district attorney promised him that he would get concurrent sentences.

C. Keith Lyde, who was formerly the district attorney of Butte County and is now in private practice, testified that the only conversation he recalled at which Fresquez may have been present was one with an officer, that on this occasion he was asked if there would be any objection to Mrs. Fresquez's bail being reduced so that she could return to care for her children, that he said he had no objection, that there was no discussion about making bail considerations for Mrs. Fresquez turn on a plea Fresquez might enter, and that the matter of concurrent or consecutive sentences was not discussed.

The referee found that no promises of leniency were made to Fresquez. The record fully supports the referee's determination that Fresquez's pleas of guilty were not the product of promises of leniency by the district attorney or any law enforcement officer, and we adopt it.

The order to show cause is discharged and the petition is denied.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.