[Crim. No. 14337. In Bank. July 21, 1970. ]

THE PEOPLE, Plaintiff and Respondent, v.
THEO ERVIN WILLIAMS, Defendant and Appellant.

896

**COUNSEL**

Michael Korn, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Timothy F. O'Leary and James H. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BURKE, J.**—Theo Ervin Williams was found guilty by a jury on two counts of first degree robbery (Pen. Code, § § 211 and 211a) and one count of kidnaping for the purpose of robbery (Pen. Code, § 209). The jury also found that he was armed with a deadly weapon at the time of the commission of each offense. The court reduced the kidnaping offense to simple kidnaping (Pen. Code, § 207) in lieu of granting a motion for a new trial and sentenced defendant to prison on each count.

Defendant appeals, contending that: The evidence is insufficient to support his kidnaping conviction in the light of *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 588, 458 P.2d 500]; the court improperly refused to appoint another attorney when a dispute arose between him and the public defender; the court erred in determining that defendant was competent to represent himself; he was denied his right to counsel at a police lineup; and certain evidence was improperly excluded. We have concluded that only the first contention can be upheld. A further question presented, although not raised by the parties, is whether, as a result of the principles enunciated in *People* v. *Floyd,* 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], a modification of the judgment is required. As we shall see, such a modification must be made.

Jack Miller, the victim named in one of the robbery counts, testified: About 7 p.m. on December 11, 1967, defendant entered a liquor store in Gardena, where Miller was working. Defendant pointed a sawed-off shotgun at Miller and told him to open the cash register. Miller complied, and defendant took about $290 from the register.

Britton Murry, the victim named in the other robbery count and in the kidnaping count, testified: About 6:15 a.m. on December 12, 1967, defendant and one Smith[1] pulled into a service station in Los Angeles where Murry was working, and defendant asked Murry whether he had a battery for the car. After Murry replied in the affirmative, the two men and Murry went inside the station. There Smith pulled out a sawed-off shotgun and defendant asked him for "the money." Murry handed him more than $100. They then locked Murry in a bathroom [apparently in the service station], but a few minutes later defendant let Murry out and said he wanted Murry to help carry a tool box and some tires. They took him to

---

[1]Michael Smith and defendant were jointly charged with the robbery and kidnaping for the purpose of robbery of Murry. A severance of the trials of the two defendants was granted. This appeal concerns solely the trial of Williams, and "defendant," as used herein, refers to Williams.

the office. After a customer entered the station, they went to the "lube room" where defendant took the customer's wallet. They then returned to the office, a distance of 25 or 30 feet. Defendant was behind Murry, and Murry walked that distance because of fear for his own safety. Murry and the customer took several tires from a rack apparently in the office and brought them and a tool box back to the "lube room." Defendant told them to bring the tires and tool box "outside." They brought them "out on the street" and began to put them down beside the car. Smith hollered that was not the car, and defendant said to bring the tires and tool box "down further." Murry and the customer put the tires and box outside a station wagon, and defendant told them "to walk on down the street." After they got "so far," defendant hollered to "go to the other side of the street." They then went to a coffee shop where they called the police. Upon returning to the gas station, Murry found the tires and tool box gone.

Officer Phillip Katz testified: On December 13, 1967, he saw defendant and Michael Smith get into a car the officer had under surveillance. He had previously received information that defendant committed the liquor store robbery. The officer followed the car, and, after it stopped, the officer, carrying his badge and revolver, approached the car and ordered the two men to get out. Smith complied. Defendant started to slouch down in the car seat and to reach under it. The officer told him to stop or he would shoot and to get out of the car. After defendant alighted, the officer looked under the seat and found a sawed-off shotgun. According to Murry and Miller, the shotgun looked like the one used in the robberies.

Defendant did not testify in his own behalf. He called two defense witnesses. Verlie Grisham, the first such witness, testified: Defendant was ill with the flu for several days including December 8 to December 12. He was then living at her home. She worked as a physiotherapist from 7:30 a.m. until 4 p.m., and during the time she was home he did not leave the house. He could not leave because he had a temperature. She is engaged to defendant's brother.

Michael Smith, the other defense witness, testified: He and defendant were arrested on December 13, 1967. The last time he saw defendant before that date was about a week earlier. The automobile in which they were riding on the day of the arrest belonged to Willie Brown. Smith had not told defendant the shotgun was in the automobile. Smith is at Wayside Honor Rancho because he was convicted of first degree robbery.

The rule in *People* v. *Daniels, supra,* 71 Cal.2d 1119, applies to the instant case, which was pending on appeal when the decision in *Daniels*

was rendered. (*People* v. *Cheffen,* 2 Cal.App.3d 638 [82 Cal.Rptr. 658]; *People* v. *Ramirez,* 2 Cal.App.3d 345, 354-357 [82 Cal.Rptr. 665]; *People* v. *Blair,* 2 Cal.App.3d 249, 257 [82 Cal.Rptr. 673]; *People* v. *Ballard,* 1 Cal.App.3d 602, 605-606 [81 Cal.Rptr. 742]; *People* v. *Ross,* 276 Cal. App.2d 729, 736 [81 Cal.Rptr. 296]; *People* v. *Diaz,* 276 Cal.App.2d 547 [81 Cal.Rptr. 16].) Although *Daniels* was directed toward a construction of the statute defining aggravated kidnaping (Pen. Code, § 209), it is clear that the considerations therein enunciated are applicable as well to simple kidnaping (Pen. Code, § 207).

In *Daniels,* we held that "the intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies (e.g., *People* v. *Knowles* (1950) . . . 35 Cal.2d 175) but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." (71 Cal.2d at p. 1139.) Under that rule we there concluded that the defendants' acts did not constitute kidnaping. In *Daniels* the defendants in the course of robbing and raping three women in their own homes, forced them to move about their rooms for distances of 18 feet, 5 or 6 feet, and 30 feet respectively. *Daniels* stated, "when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will not be deemed to constitute the offense proscribed by section 209. Movement across a room or from one room to another, in short, cannot reasonably be found to be asportation 'into another part of the same county.' (Pen. Code, § 207.)" (71 Cal.2d at p. 1140.)

In the instant case as shown by the recited facts the movements of Murry were (1) on the gas station premises and (2) on a sidewalk or street. In determining whether defendant's acts constituted kidnaping we shall consider the former movements first.

Although the movements on the gas station premises do not appear to have been all inside an enclosure, those movements are analogous to movements inside "a residence . . . or place of business or other enclosure" and cannot reasonably be found to be asportation "into another part of the same county." (Pen. Code, § 207.)

■ No claim is made by the Attorney General, nor does it appear, that those movements substantially increased the risk of harm to Murry over and above that necessarily present in the crime of robbery itself. The Attorney General, however, argues that some of the movements were not "merely incidental to the commission of the robbery." He admits that up to the point when Murry was locked in the bathroom all the movements were incidental to the robbery but argues that the movements after Murry was released from the bathroom "were not incidental because they were not necessary movements of the type which ordinarily occur during the commission of a robbery." He asserts that the movements and forced action of Murry in obtaining and carrying the tires and tool box constituted "involuntary servitude" rather than mere incidental movements, and he cites dictionary definitions of the word "incidental," apparently relying upon a limited portion of those definitions.[2]

The phrase "merely incidental to the commission of the robbery," as used in *Daniels,* however, does not have the restricted meaning urged by the Attorney General. *Daniels* stated, "In the present case . . . defendants had no interest in forcing their victims to move just for the sake of moving; their intent was to commit robberies and rapes, and the brief movements which they compelled their victims to perform were solely to facilitate such crimes. It follows, a fortiori, that those movements were 'incidental to' the robberies and rapes within the meaning of [*Cotton* v. *Superior Court,* 56 Cal.2d 459], and that 'the Legislature could not reasonably have intended that such incidental movement be a taking . . . from one part of the country to another.'" (71 Cal.2d at p. 1131.)
■ Similarly here the movements of Murry on the gas station premises both before and after he was locked in the bathroom appear to have been brief and to have been solely to facilitate the commission of the crime of robbery. It thus appears that those movements were merely incidental to the commission of the robbery within the meaning of *Daniels.*

■ The fact that the trial court reduced the crime from kidnaping for the purpose of robbery (Pen. Code, § 209) to simple kidnaping (Pen. Code, § 207) does not preclude our concluding that the movements of

---

[2]Webster's Third New International Dictionary (1961) defines "incidental" as "1: Subordinate, non-essential, or attendant in position or significance: as a: occurring merely by chance or without intention or calculation; occurring as a minor concomitant: . . . b: being likely to ensue as a chance or minor consequence . . . c: lacking effect, force, or consequence . . . d: presented purposefully but as though without consideration or intention. . . ."

Black's Law Dictionary (4th ed. 1951) defines "incidental" as "Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal: something incidental to the main purpose."

Murry on the gas station premises were merely incidental to the commission of the robbery. (*People* v. *Ross,* 276 Cal.App.2d 729, 736 [81 Cal.Rptr. 296].) The trial court evidently reduced the crime in order to avoid the harsher penalty provision of section 209.

■ We turn now to the movements of Murry off the gas station premises. From the present record it is a matter of speculation whether Murry left the gas station premises before he put the tires and tool box down and, if so, for what distance and whether his movements after defendant told him to "walk on down the street" were the result of compulsion or of Murry's own free will. As we have seen, Murry testified to Smith's holding a shotgun inside the gas station when money was demanded from Murry and to Murry's own subsequent movements on and off the gas station premises. Although he testified that he brought the tires and tool box "out on the street," began to put them down beside the car, and, after defendant said to bring them "down further," put them outside a station wagon, such testimony does not preclude the possibility that up to that point Murry himself (as distinguished from the tires and tool box) had not left the gas station premises. That the prosecutor understood the testimony as indicating Murry was still at the gas station is suggested by the fact that immediately after Murry testified to placing the tool box outside a station wagon the prosecutor inquired "And then did you stay at the gas station or did you leave the gas station?" Murry's testimony is thus consistent with his leaving the gas station premises only after defendant told him to "walk on down the street," and the evidence is insufficient to establish that he walked down the street as a result of compulsion by defendant rather than of Murry's own free will.

The facts relating to Murry's movements off the gas station premises were not fully developed at the trial, undoubtedly because the trial preceded the decision in *Daniels.* However, as the record now stands the evidence is insufficient to support the kidnaping conviction.

With respect to defendant's claim that the court erred in not appointing another attorney to represent him, the record shows: After the jury was sworn and before any evidence was presented, defendant told the court that he wanted to call several persons as witnesses, that his counsel (a public defender) did not want to call them, and that he would like to have another attorney appointed. The public defender stated that he had interviewed the persons in question and was satisfied they would not be of any assistance to the defense and that he did not desire to call them as witnesses. After the court declared that it would not appoint another attorney, de-

fendant requested that either another attorney be appoined or he be allowed to represent himself. During discussion of the matter he commented in effect that he believed the question of the reliability of his witnesses was solely for the jury and that "bringing in witnesses" was his only way of proving his innocence. The public defender reiterated his position on the matter and stated that he would not call the persons as witnesses while he was in charge of the case, although he would aid defendant in securing their presence if defendant represented himself. The court again declined to appoint another attorney, and, after exploring the question of defendant's competency to represent himself, the court relieved the public defender.

 Criminal defendants are entitled under the federal Constitution to the assistance of court-appointed counsel if they are unable to employ private counsel. (*Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].) "However, the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney. 'A defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused. . . . "The right of a defendant in a criminal case to have the assistance of counsel for his defense . . . may include the right to have counsel appointed by the court . . . discharged or other counsel substituted, if it is shown . . . that failure to do so would substantially impair or deny the right . . . , but the right to such discharge or substitution is not absolute, in the sense that the court is bound to accede to its assertion without a sufficient showing . . . that the right to the assistance of counsel would be substantially impaired . . . in case the request is not granted, . . ." ' (*People* v. *Mitchell* (1960) 185 Cal.App.2d 507, 512 . . . , quoting 157 A.L.R. 1225, 1226; see . . .; *People* v. *Foust* (1968) 267 Cal.App.2d 222, 228 . . .; *In re Bunker* (1967) 252 Cal.App.2d 297, 311 . . .; *People* v. *Bourland* (1966) 247 Cal. App.2d 76, 84-85 . . .; *People* v. *Jackson* (1960) 186 Cal.App.2d 307, 315. . . .)" (*People* v. *Marsden, ante,* pp. 118, 123 [84 Cal.Rptr. 156, 465 P.2d 44).

In *People* v. *Marsden, supra, ante,* p. 118, we held that the trial court committed prejudicial error in denying the defendant's motion to substitute new appointed counsel without giving the defendant an opportunity to state the reasons for his request. In the present case defendant was afforded an opportunity to state the reasons for his request and, as we have seen,

informed the court of a disagreement between himself and the public defender as to whether several persons should be called as witnesses.

■ An attorney ordinarily may waive his client's rights as to matters of trial tactics and control the court proceedings (*People* v. *Robles, ante,* pp. 205, 214 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *Floyd,* 1 Cal.3d 694, 704 [83 Cal.Rptr. 608, 464 P.2d 647]; *People* v. *Hill,* 67 Cal.2d 105, 114 [60 Cal.Rptr. 234, 429 P.2d 586]; *People* v. *Foster,* 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976]; see also *Linsk* v. *Linsk,* 70 Cal.2d 272, 279, fn. 4 [74 Cal.Rptr. 544, 449 P.2d 760]), although he may not deprive the defendant of certain fundamental rights (*People* v. *Robles, supra; In re Mosley,* 1 Cal.3d 913, 924 [83 Cal.Rptr. 809, 464 P.2d 473]; cf. *In re Tahl,* 1 Cal.3d 122, 131-133 [81 Cal.Rptr. 577, 460 P.2d 449]; *People* v. *Holmes,* 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583]). Whether to call certain witness is generally a matter of trial tactics. (See, e.g., *People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865]; *People* v. *Garn,* 246 Cal.App.2d 482, 484 [54 Cal.Rptr. 867]; *People* v. *Moten,* 207 Cal.App.2d 692, 696 [24 Cal.Rptr. 716]; see Witkin, Cal. Criminal Procedure (1963) p. 372.)

■ A disagreement between a defendant and appointed counsel regarding the defendant's fundamental right to testify in his own behalf does not necessarily require the appointment of another attorney. (*People* v. *Robles, supra, ante,* pp. 205, 215.) ■ Nor does a disagreement between a defendant and appointed counsel concerning trial tactics necessarily compel the appointment of another attorney. *Robles* also stated that "in a few cases the disagreement as to whether a defendant should testify may signal a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." Likewise a disagreement as to trial tactics could signal such a breakdown.

Here, however, it does not appear that the trial court erred in impliedly concluding that there was not a breakdown of the attorney-client relationship of such magnitude as to substantially impair defendant's right to the assistance of counsel. Nor does it appear that any matters presented to the trial court established that the public defender's representation was inadequate. At the time of the request for a different appointed counsel the court was not informed of the names of the persons defendant wanted as witnesses or of the specific matters to which they would testify. Furthermore, the persons defendant wanted as witnesses apparently (in the light of the subsequent trial) were Verlie Grisham and Michael Smith, whose testimony is summarized above. It does not appear what they or defendant stated during their interviews with the public defender, and even had defendant

informed the court of the names of the two witnesses and of the nature of their testimony it would not have been established that the public defender was inadequately representing defendant. Also, it may be noted that the court, in urging defendant to retain the public defender, made comments indicating the public defender was highly competent. (These remarks are hereinafter quoted in connection with the discussion of defendant's waiver of counsel.)

To make mandatory the appointment of different counsel in all cases involving a disagreement between the defendant and his court-appointed attorney regarding trial tactics would not only add to the expense of the state in furnishing counsel for the indigent but would also give too great a chance to delay trials and otherwise embarrass effective prosecution for crime. Furthermore, many nonindigents would in all likelihood be unable to afford more than one attorney's fee, and unless they too were always entitled to a court-appointed attorney where there was a disagreement as to trial tactics indigents would be in a 'better position than such non-indigents.

Defendant relies upon *People* v. *Moss,* 253 Cal.App.2d 248, 251 [61 Cal.Rptr. 107], wherein the court stated, "We believe the basic right to representation by counsel made so clear by *Gideon* v. *Wainwright* [*supra*] 372 U.S. 335, 344 [9 L.Ed.2d 799, 805] . . ., encompasses the right to the appointment of different counsel when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic."[3] *Gideon* did not involve the question of the right to have more than one attorney appointed under some circumstances, and the court in *Moss* cited no authority in support of its belief. *Moss* is disapproved insofar as it is inconsistent with the views expressed herein.

With respect to defendant's claim that the court erred in permitting him to represent himself, the record shows: In January 1968, following a preliminary hearing, defendant was charged in an information with the offenses in question. Later that month Public Defender Stanton was appointed to represent him, and continuances were granted to February 6, 1968, for plea. On that date defendant, while represented by the same public defender, declined to enter a plea, and the court entered a plea of not guilty for him. From March 28, 1968, until he was relieved on November 13, 1968, Public Defender Kronenberg represented defendant and appeared in court with defendant on a number of occasions, including

---

[3]We expressly refrained from deciding the soundness of that statement in *People* v. *Maddox,* 67 Cal.2d 647, 654, footnote 2 [63 Cal.Rptr. 371, 433 P.2d 163], and *People* v. *Floyd, supra,* 1 Cal.3d 694, 705, since under the circumstances there appearing it was unnecessary to decide the matter.

ones at which continuances were granted at his request. The judge presiding at the proceedings on and after April 23, 1968, was the judge who accepted defendant's waiver of counsel. At the April 23 proceeding a motion for return or suppression of evidence on the ground of unlawful search or seizure (Pen. Code, § 1538.5) was made and denied, and it appears from the clerk's transcript that at the proceeding on the following day defendant testified.

On November 13, 1968, after the jury was sworn, and the court denied defendant's request for a different public defender, defendant informed the court in effect that he would like to be permitted to represent himself if another public defender was not appointed. The following colloquy then occurred: "THE COURT: Do you feel competent to represent yourself? THE DEFENDANT: Yes, I do. THE COURT: Have you ever represented yourself before? THE DEFENDANT: No, I haven't. THE COURT: Do you think you know enough to make proper objections to the introduction of evidence? THE DEFENDANT: Yes, I do. THE COURT: Have you ever had an opportunity to do so before? THE DEFENDANT: Through counsel, yes. THE COURT: How much education have you had? THE DEFENDANT: I had one year of college, graduated from high school. . . . THE COURT: . . . Then you are prepared to continue with this trial now? THE DEFENDANT: Yes, I am, your Honor." The public defender asked if he could confer with defendant, and the court agreed to his doing so. Following a recess, the following occurred: "THE COURT: . . . Mr. Williams, do you know that you have a constitutional right to represent yourself. THE DEFENDANT: Yes. THE COURT: And I gather that it is your desire to represent yourself? THE DEFENDANT: If not, another counsel appointed, yes. THE COURT: I am not going to appoint another counsel for you. It is my feeling that you are probably making a bad mistake in attempting to represent yourself. I think you are getting good representation. I think your counsel's decision not to call certain witnesses is probably—I don't know, but I think it is probably in your best interests. I think you are probably better off following your counsel's advice and retaining counsel. . . . You have very competent counsel to represent you. I have had this counsel in this courtroom on numerous occasions. I think he represents defendants in criminal cases as well as any counsel I have seen. I would strongly advise you to retain him. I think the results of your representing yourself will undoubtedly be worse for you than if you had counsel. Now, you are going to be in a position where you are going to have to make objections; you are going to have to make argument, all of which I don't think you have had much experience, and do you feel competent to do that? THE DEFENDANT: Well, your Honor, I realize everything you say, and this is my only way of proving my innocence of this crime, bringing in wit-

nesses, and seeing as though I cannot bring in witnesses because of counsel's disagreeing with this, this is my only way of proving that I am innocent of this crime, and that is my only out. THE COURT: All right. Then it is your desire to represent yourself? THE DEFENDANT: Yes, it is. THE COURT: All right. The Public Defender is relieved."

At the trial defendant cross-examined the prosecution witnesses, utilizing the preliminary hearing transcript during the cross-examination; made an opening and closing argument;[4] and argued motions for a mistrial and for a new trial, citing authorities in support thereof. Upon denial of the latter motion he expressed his intent to appeal.

■■■ An accused "has the constitutional right to waive counsel and represent himself if he knowingly and intelligently elects to do so. [Citations.]" (*People* v. *Floyd, supra,* 1 Cal.3d 694, 702, quoting from *People* v. *Maddox, supra,* 67 Cal.2d 647, 651.) "[T]he decision whether the defendant is capable of making a knowing and intelligent election is a discretionary matter, which, absent a showing of abuse, will not be disturbed on appeal. [Citations.]" (*People* v. *Floyd, supra,* at pp. 702-703; in accord *People* v. *Daniels, supra,* 71 Cal.2d 1119, 1141.)

■■■ Before the waiver of counsel may be accepted the trial court must determine the defendant's competency to represent himself. (See e.g., *In re Johnson,* 62 Cal.2d 325, 335-337 [42 Cal.Rptr. 228, 398 P.2d 420].) ■■■ As stated in *Johnson* (at p. 335), "the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he 'understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted [quoting from *In re James* (1952) 38 Cal.2d 302, 313 (240 P.2d 596)].' " (In accord, *People* v. *Floyd, supra,* 1 Cal.3d 694, 703; *People* v. *Carter,* 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214].) "The inquiry into the defendant's ability to defend himself fulfills a two-fold purpose. It serves not only to determine his competence, but also to alert him to the seriousness of the action he contemplates as well as the pitfalls he may expect to encounter." (*People* v. *Carter, supra.*) ■■■ "The scope of the inquiry will, of course, vary according to the seriousness of the crime charged, and the trial judge is not required to demand that a defendant as a prerequisite to representing himself, demonstrate either the acumen or the learning of an attorney. (*People* v. *Carter, supra,* at p. 673; *People* v. *Linden,* 52 Cal.2d 1, 17 [338 P.2d 397].)" (*In re Fresquez,* 67 Cal.2d 626, 630 [63 Cal.Rptr. 271, 432 P.2d 959].)

---

[4]These arguments were not made part of the record on appeal.

■ Here the crimes charged were of a serious nature,[5] but the main issue at the trial was a simple one, namely the identity of the robber at the liquor store and of the man who with Smith committed the alleged crimes against Murry. As we have seen, before it accepted the waiver of counsel, the court had conducted various proceedings and had an opportunity to observe defendant on those occasions. The court cautioned defendant against representing himself and conducted some inquiry into his ability to do so. The court did not explicitly inquire whether defendant understood the nature of the charges, the elements of the offenses, the possible pleas and defenses, or the punishments that might be imposed, and it is questionable whether the inquiry was sufficient (see *People* v. *Carter, supra,* 66 Cal.2d 666, 668, 672-673.) However, any error in this regard does not require a reversal of the judgment since the record in its entirety shows that defendant had the requisite competence to represent himself. (Cf. *People* v. *Hills,* 268 Cal.App.2d 504, 511 [74 Cal.Rptr. 180]; *People* v. *Kranhouse,* 265 Cal.App.2d 440, 448 [71 Cal.Rptr. 223]; *People* v. *Mason,* 259 Cal.App.2d 30, 36 [66 Cal.Rptr. 601]; *People* v. *Santos,* 245 Cal.App.2d 337, 339-340 [53 Cal.Rptr. 859]; see also *In re Fresquez, supra,* 67 Cal.2d 626, 629-634.)

On cross-examination of each of the robbery victims defendant elicited testimony that the witness had identified him at a police lineup. Defendant, relying upon *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], asserts that he was not afforded counsel at the lineup. Since he elicited the testimony regarding the lineup identification, he presumably is not complaining of the receipt of that testimony but rather of the receipt of the victims' courtroom identification of defendant (elicited on direct examination by the prosecution) on the theory it was the fruit of the prior assertedly illegal lineup. ■ Since the lineup was after the decisions were rendered in *Wade* and *Gilbert,* the rules in those cases were applicable. (*People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].) However, at the trial defendant made no objection on the ground of lack of counsel at the lineup and therefore cannot raise the issue now. (*People* v. *Morrow,* 276 Cal.App.2d 700, 703-704 [81 Cal.Rptr. 201]; *People* v. *Davis,* 270 Cal.App.2d 841, 843 [76 Cal.Rptr. 242]; *People* v. *Armstrong,* 268 Cal.App.2d 324, 326 [74 Cal.Rptr. 37]; *People* v. *Rodriguez,* 266 Cal.App.2d 766, 769-770 [72 Cal.Rptr. 310].) The fact that defendant proceeded in propria persona does not excuse

---

[5]Kidnaping for the purpose of robbery where there is no bodily harm is punishable by life imprisonment. (Pen. Code, § 209), and first degree robbery is punishable under the circumstances here appearing by not less than five years in prison (Pen. Code, §§ 211a, 213) with a maximum of life (Pen. Code, § 671).

him from that rule. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; see *People* v. *Redmond,* 71 Cal.2d 745, 758 [79 Cal.Rptr. 529, 457 P.2d 321].) Had an objection been made the prosecution might have been able to show that defendant was represented by counsel at the lineup or waived such representation.

■■■ Defendant claims that the court erred in excluding a police report which, assertedly, contains statements relevant to the credibility of a prosecution witness. The report is not part of the record on appeal, nor are the contents of the statements shown by the record. Under the circumstances it is impossible to say that the court erred in excluding the report or that defendant was prejudiced thereby. (*People* v. *Tyren,* 179 Cal. 575, 579 [178 P. 132]; *People* v. *DuFault,* 1 Cal.App.2d 105, 108 [36 P.2d 196]; *People* v. *Lee,* 108 Cal.App. 609, 611-612 [291 P. 887]; *People* v. *Rowe,* 100 Cal.App. 605, 606 [280 P. 554].)

The information charged that defendant was armed with a deadly weapon, namely a sawed-off shotgun, at the time of the commission of each of the robberies. The jury found the charges to be true, and the judgment so recites. The evidence shows that defendant was armed with a sawed-off shotgun when he robbed Miller and that defendant's accomplice (but not defendant) was armed when they robbed Murry. The only basis for the finding that the robberies were of the first degree is the foregoing evidence.[6]

In *People* v. *Floyd, supra,* 71 Cal.2d 879, we held that the provisions of Penal Code sections 3024 and 12022 (providing for a minimum term of sentence in certain cases and for additional punishment in cases where the defendant was armed in a specified manner) are inapplicable where the defendant was found guilty of first degree robbery on the basis of the fact that he was armed. We stated that "the judgment in [*Floyd*] should provide that at the time of the commission of each of the instant offenses sections 3024 and 12022 of the Penal Code were inapplicable, but defendant was armed within the meaning of section 1203 of the Penal Code" and that "the judgment should also specify the nature of the weapon."[7] (71

---

[6]Penal Code section 211a provides: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon, and the robbery of any person who is performing his duties as operator of any motor vehicle, streetcar, or trackless trolley used for the transportation of persons for hire, is robbery in the first degree. All other kinds of robbery are of the second degree." In the instant case there is no evidence that the robberies involved torture, nor were the robberies of an operator of one of the described vehicles.

[7]After *Floyd* was decided, Penal Code section 12022.5 became effective, which section provides for additional punishment for certain persons including any person who uses a firearm in the commission of a robbery, and the section specifically pro-

Cal.2d at p. 884.) In *Floyd* the defendant apparently was personally armed at the time of the offenses.

The fact that defendant's accomplice was armed at the time of the robbery of Murry did not affect defendant's eligibility for probation under Penal Code section 1203 since defendant was not himself so armed. (*In re Hernandez,* 64 Cal.2d 850, 852 [51 Cal.Rptr. 915, 415 P.2d 803]; *People* v. *Perkins,* 37 Cal.2d 62, 64 [230 P.2d 353]; *People* v. *Snyder,* 276 Cal.App.2d 520, 527 [80 Cal.Rptr. 822].)

In order to comply with the principles enunciated in *People* v. *Floyd, supra,* 71 Cal.2d 879, the judgment in the instant case is modified by striking therefrom the phrase "and that defendant was armed as alleged" that appears immediately after the words "Robbery of the first degree" and by adding in lieu thereof the provision "and it appearing that at the time of the commission of the robbery charged in count 1 defendant was armed within the meaning of section 1203 of the Penal Code and that the weapon was a sawed-off shotgun but that at the time of the commission of that offense sections 3024 and 12022 of the Penal Code were inapplicable."[8]

The judgment of conviction of kidnaping is reversed. In all other respects the judgment as modified is affirmed. A purported appeal from the order denying a new trial is dismissed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

Appellant's petition for a rehearing was denied August 19, 1970.

---

vides that it "shall apply even in those cases where the use of a weapon is an element of the offense." This section, however, cannot affect the instant case since it became effective after defendant committed the robberies.

[8]The judgment as it now reads, provides in relevant part: "Where as the . . . defendant having been . . . found guilty . . . of ROBBERY (Sec. 211 PC), a felony, as charged in each of the Counts 1 [robbery of Miller] and 3 [robbery of Murry] of the information, which the Court found to be Robbery of the first degree *and that defendant was armed as alleged*; . . . It is Therefore Ordered . . . that . . . defendant be punished by imprisonment in the State Prison for the term prescribed by law, on said Counts. . . ." (Italics added.) The modification here made deletes the underscored words and inserts in lieu thereof the provision set forth above.