Filed 12/1/25  P. v. Alexander CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B336492 |
| | (Super. Ct. No. BA510916) |
| Plaintiff and Respondent, | (Los Angeles County) |
| v. | |
| DANIELLE ALEXANDER, | |
| Defendant and Appellant. | |

The trial court found Danielle Alexander violated probation when she violated a protective order.  The court revoked and reinstated probation on the same terms with the additional condition she serve 60 days in county jail.

Appellant contends:  (1) the court abused its discretion in revoking probation and sentencing her to county jail without any evidence she knew the protected person was living at the residence when she visited it; and (2) the court abused its discretion and deprived her of due process by relying on a text

message and the probation officer's statements without a formal hearing. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2022, appellant was charged with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] of Ernest R. In April 2023, appellant pleaded no contest to assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)). The court suspended imposition of sentence and placed appellant on probation for three years with terms and conditions.

In January 2024, the court conducted a contested probation violation hearing concerning a protective order violation. Christopher Garcia testified Ernest R. is his cousin through marriage. Garcia knew appellant as Ernest R.'s former girlfriend of about four years. They had visited Garcia's home in Las Vegas, Nevada about six times.

On September 5, 2023, Ernest R. had been living at Garcia's home for about 30 days. That morning at around 9:47 a.m., Garcia received a notification from his security system. Through a live video feed, Garcia saw appellant at the door. She did not knock or ring the doorbell. Instead, she stared into the camera and stood in front of Garcia's door for about six minutes.

Garcia had not invited appellant to his residence that day or anytime in 2023. Garcia called Ernest R. to ask if she was invited. Ernest R. was "very surprised" and "fearful." Ernest R. subsequently moved out "for safety."

The court took judicial notice of the April 2023 protective order and several of its terms.

Appellant testified she met Garcia while dating Ernest R. Appellant developed a "very strong relationship" with Christina

---

[1] Undesignated statutory references are to the Penal Code.

2

Garcia[2], Garcia's long-term partner or wife. She stopped at the Garcia residence to return some pictures that belonged to Christina. Appellant did not spend six minutes there; she dropped the pictures on the porch and left. She did not tell Christina or Garcia that she was coming. Appellant was in Las Vegas caring for her sick grandmother.

Appellant indicated she blocked Ernest R. on social media in July 2021. But she had looked at his social media "to gather some type of proof of [her] innocence." She saw several posts that caused her to believe Ernest R. resided in Detroit in September 2023. None of the posts in the defense exhibits included the name Ernest R.

In rebuttal, Garcia testified appellant never left photographs on his doorstep.

The court found appellant violated her probation. The court revoked probation and set a hearing to allow for preparation of a probation report.

The prosecution later filed a probation revocation motion alleging appellant was responsible for a harassing message Ernest R. received after the probation violation hearing. The motion included a copy of the message.

Appellant signed a *Faretta* waiver and represented herself at the hearing.[3] When the prosecution broached the "harassing message," appellant objected that "[t]here's no proof that this message came from me whatsoever." The court also solicited a

_____

[2] We refer to Christina Garcia by her first name due to the shared surname.

[3] *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562].

3

recommendation from the probation officer.  The officer stated that, based on probation records, it did not appear appellant had permission to visit Las Vegas.  Appellant did not object.

The court formally revoked and reinstated probation on the same terms and conditions with the additional condition she serve 60 days in county jail.

## DISCUSSION

"Section 1203.2, subdivision (a), authorizes a court to revoke probation if the interests of justice so require and the court, in its judgment, has reason to believe that the person has violated any of the conditions of his or her probation."  (*People v. Urke* (2011) 197 Cal.App.4th 766, 772.)  "The facts supporting a probation revocation must be proved by a preponderance of the evidence."  (*People v. Gray* (2023) 15 Cal.5th 152, 163.)

"We review the trial court's probation revocation order for an abuse of discretion.  [Citations.]  The trial court's factual findings are reviewed for substantial evidence."  (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.)  Under the latter standard, we "review the whole record most favorably to the judgment to determine whether there is substantial evidence— that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof."  (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.)

Appellant argues "the record is void of any evidence that would support a conclusion that appellant knew [Ernest R.] was living" at the Garcia residence.  We disagree.

"'Reliance on circumstantial evidence is often inevitable when . . . the issue is a state of mind such as knowledge.'"  (*People v. Lewis* (2001) 26 Cal.4th 334, 379.)  Here, the circumstances

4

indicate appellant had the requisite state of mind. Appellant went to the Garcia residence during the brief period Ernest R. lived there. Appellant's behavior was inconsistent with someone dropping off photographs. She did not knock or ring the doorbell. Instead, she lingered at the door for about six minutes. Garcia testified appellant never left photographs on his doorstep. Viewing the record most favorably to the judgment, substantial evidence supports the trial court's probation violation finding.

Appellant contends she "was denied due process to a formal hearing" because she "was not given an opportunity to confront and cross-examine [Ernest R.] on the alleged text message sent to him nor on what the probation officer stated about the prohibition on going to Las Vegas, Nevada."

By failing to object, appellant forfeited any claimed error regarding the probation officer's information. (Cf. *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 [appellate courts generally "'will not consider claims of error that could have been—but were not—raised in the trial court'"]; see also *People v. Williams* (1970) 2 Cal.3d 894, 909-910 ["fact that defendant proceeded in propria persona [did] not excuse him" from rule requiring objection].)

Assuming appellant's objection to the text message sufficed to avoid forfeiture, any error was harmless beyond a reasonable doubt. (See *People v. Arreola* (1994) 7 Cal.4th 1144, 1161.) The message was simply a continuation of the conduct the court had already found to violate appellant's probation. (*Ibid* [harmless error where substantial evidence independent of improperly admitted transcript established probation violations].) We have already determined substantial evidence supported that probation violation finding. We conclude beyond a reasonable doubt that the trial court would have arrived at the same

5

disposition even without considering the text message.  Remand "would be a futile act . . . ."  (*Id*. at p. 1162.)

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

Michael E. Pastor, Judge
Superior Court County of Los Angeles

_____

Asya Ovsepyan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Blake R. Armstrong, Deputy Attorney General, and Kenneth C. Byrne, Supervising Deputy Attorney General, for Plaintiff and Respondent.