Filed 7/12/16  P. v. Sims CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B260086 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA396843) |
| v. | |
| KEITH JOHN SIMS, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert J. Perry, Judge.  Affirmed.

Mark S. Devore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.

————————————

A jury convicted Keith John Sims, Jr., (Sims) of three counts of making criminal threats against his wife Yuliis Keaton (Keaton) and stepson Tamajae Lewis (Lewis) (Pen. Code, § 422, subd. (a))[1] (counts 1, 6, 7), one count of assault with a deadly weapon on Keaton (§ 245, subd. (a)(1)) (count 2), and one count of stalking Keaton (§ 646.9, subd. (a)) (count 5). (*People v. Sims* (May 13, 2014, B244905) [nonpub. opn.].) The jury found true that Sims personally used a knife in counts 1 and 2. (*Ibid.*)

On appeal, Sims contends that the trial court abused its discretion in denying his motion to discharge court-appointed counsel, Erica Pines (defense counsel), brought pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden* motion). The principal disagreement between Sims and defense counsel concerns which individuals to call as witnesses. Because we conclude that the disagreement between Sims and defense counsel concerned a disagreement on trial tactics that did not rise to the level of inadequate legal representation and that the trial court did not abuse its discretion in accepting defense counsel's explanations for her trial strategy decisions, we affirm the trial court's order denying Sims's *Marsden* motion.

## BACKGROUND

Because this is a second appeal, we need not provide a detailed account of the principal facts related to the charged offenses or the proceedings below as our prior opinion contains such a discussion. (*People v. Sims*, *supra*, B244905.) Instead, we take up where the record in the prior appeal left off.

## I.     In the first appeal, we directed the trial court to hold a *Marsden* hearing.

In the prior appeal, Sims asserted that the trial court had erred in refusing to conduct a *Marsden* hearing after he had advised the trial court that he had "new evidence" that could lead to a new trial. Because there had been no offer of proof or statement by Sims or defense counsel concerning the subject matter of his new trial motion and because the trial court had erred in failing to hold a *Marsden* hearing, we

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

remanded for the limited purpose of determining whether the *Marsden* motion should have been granted.  We gave the following instructions:  "If the court finds defendant's *Marsden* motion is meritorious, the court is to permit defendant to substitute counsel and is to hold a hearing on defendant's motion for new trial based on asserted error to determine if there is a reasonable probability the result at trial would have been different but for any asserted error. . . .  If the *Marsden* motion, and any new trial motion brought are denied, then the judgment shall be reinstated as modified."  (*People v. Sims*, *supra*, B244905 at p. 23.)

## II.     On remand, the trial court conducted a *Marsden* hearing and denied Sims's *Marsden* motion.

On October 8, 2014, the trial court held a hearing to address Sims's *Marsden* motion.  At the beginning of the hearing, Sims presented three exhibits including his handwritten declaration in support of his *Marsden* motion alleging that defense counsel had been ineffective for, inter alia, not acceding to his request to call his wife Keaton as a witness at trial.[2]  According to Sims's declaration, after his stepson Lewis's testimony at trial, Sims requested defense counsel to call Keaton as an ostensibly favorable witness to recant her claim of spousal abuse; Sims asserted that Keaton was "the only person who can set the record straight"; defense counsel refused Sims's request.  At the *Marsden* hearing, in light of defense counsel's alleged failure to investigate Keaton as a potential favorable witness, Sims "ask[ed] the court for a new trial motion" based on ineffective assistance of counsel.

The trial court sua sponte proffered a reason supporting defense counsel's decision not to call Keaton as a witness:  because the prosecution was unable to secure Keaton's

---

[2] The other two exhibits, a handwritten declaration by Sims's father, Keith John Sims, Sr., and a handwritten declaration by Sims's mother, Connie Alexander, asserted that Keaton had told both parents "that the [November 4, 2011] events never occurred" and that Sims had "never threaten[ed] or place[d] any type of knife to [Keaton's] throat."

3

testimony on its behalf, "from a defense strategy standpoint, it might be actually helpful to go forward with the absent main witness."

Agreeing with the trial court, defense counsel explained that she had thoroughly investigated Keaton as a potential witness but she had made a tactical decision not to call Keaton for several reasons:

First, defense counsel stated, "I made a tactical decision that [Keaton] should not testify because . . . . [¶] I knew based upon the court's ruling [at a *Crawford*[3] hearing to determine what evidence would come in if Keaton did not testify] that if Ms. Keaton did not testify, that counts 3 and 4 would likely be dismissed in an 1118.1 motion . . . . And I made the decision that that would limit Mr. Sims' exposure. And, in fact, an 1118.1 was granted as to counts 3 and 4, so he was convicted of two fewer strikes."[4] Further, defense counsel explained that Keaton's proffered testimony recanting her prior statement to the police covered only one of the multiple incidents charged in the information: specifically, the incident that formed the basis of counts 3 and 4 that defense counsel "was pretty confident were going to be dismissed on 1118.1."[5]

Second, defense counsel explained that Keaton intended to disclose in her proffered testimony that Sims was on parole, and therefore he feared another arrest, as the reason why Sims was hiding in the closet when the police arrived at Keaton's residence

---

[3] *Crawford v. Washington* (2004) 541 U.S. 36.

[4] Pursuant to section 1118.1, "the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."

[5] Count 3 (criminal threats made against Keaton) and count 4 (assault with a deadly weapon against Keaton) stemmed from events that occurred on January 22, 2012 when the police apprehended Sims at Keaton's residence. (*People v. Sims*, *supra*, B244905 at pp. 4–5.) The remaining counts concerned September 2011 threats against Lewis and Keaton, incidents of following and harassing Keaton between September 2011 and January 22, 2012, and a November 4, 2011 assault upon Keaton. (*Ibid.*)

4

to arrest him on January 22, 2012 (and not that Sims was hiding because of an assault by Sims against Keaton which would have supported an inference of consciousness of guilt). For that reason, defense counsel concluded, "I thought [that the jury learning] the fact that Mr. Sims was on parole, coupled with the fact that the court had let in his prior stalking conviction, would be way too damaging for Mr. Sims . . . not only would [the jury] not believe what Ms. Keaton was saying, but they would convict him of all of the counts."

Third, defense counsel disclosed that Keaton's absence at the trial was an intentional component of the defense strategy to demonstrate the wife's motive for fabricating the allegations of spousal abuse. Specifically, according to the defense strategy, because Keaton "is a bad mother, and that was corroborated by the custody records," and her son Lewis disapproved of the relationship between Keaton and Sims, both Keaton and Lewis had motives to fabricate the story of domestic abuse. Thus, defense counsel intended to portray Keaton's absence at the trial as evidence showing that "she is a bad mother" and "that was part of the motive for why the complaining witness would have lied [about the spousal abuse]."

In sum, defense counsel explained that her decision not to call Keaton as a witness was "a tactical decision to limit [Sims's] exposure by not having the complaining witness in court, . . . to decrease the number of strikes he can get convicted of, and argue the fact that [Keaton] is not here, in part, because she is a bad mother . . . . [¶] . . . as opposed to putting up a recanting witness that I did not find to be—I thought her excuses would be more damaging to Mr. Sims . . . . Furthermore, her statements that nothing happened did not go to all of the incidents [charged in the information]."

To the point of Sims's prior motion for a new trial, defense counsel stated, "Mr. Sims wanted me to file a motion for new trial based on the fact that we had a new witness which was . . . Keaton, and I told him that I cannot in good faith put that motion before the court because I do not believe she is a new witness. She is a witness I chose not to call."

5

After confirming with Sims that there were no further complaints that needed to be addressed, the trial court denied the *Marsden* motion: "I thought [defense counsel] represented him very well. In fact, I even said so. To quote the court, I said, you fought very hard for your client, at page 1510, and I feel that way today. I thought you were well represented, and I thought the evidence was quite substantial. And I think . . . Lewis was the princip[al] witness in the case. [¶] So anyway, I believe I've heard the *Marsden* motion. I have satisfied myself that it is not meritorious. It is denied." The trial court also denied the "motion for new trial as coupled with the *Marsden* motion."

## DISCUSSION

### I.     Jurisprudence on a *Marsden* motion to substitute court-appointed counsel

The law governing a *Marsden* motion is well settled. "'""A defendant is entitled to relief if the record clearly shows that the . . . appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].""'" (*People v. Memro* (1995) 11 Cal.4th 786, 857.) The defendant pursuing a *Marsden* motion must make a sufficient showing that the failure to replace counsel would "'"substantially impair"'" his or her right to assistance of counsel. (*Ibid.*) "A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense." (*People v. Welch* (1999) 20 Cal.4th 701, 728.)

"We do not find *Marsden* error where complaints of counsel's inadequacy involve tactical disagreements." (*People v. Dickey* (2005) 35 Cal.4th 884, 922; *People v. Welch*, *supra*, 20 Cal.4th at pp. 728–729.) The appointed attorney has "the right and duty to control the trial." (*In re Atchley* (1957) 48 Cal.2d 408, 418.)

"To make mandatory the appointment of different counsel in all cases involving a disagreement between the defendant and his court-appointed attorney regarding trial tactics would not only add to the expense of the state in furnishing counsel for the indigent but would also give too great a chance to delay trials and otherwise embarrass effective prosecution for crime." (*People v. Williams* (1970) 2 Cal.3d 894, 906.)

6

Specifically, the decision whether to call certain witnesses "is generally a matter of trial tactics." (*People v. Williams*, *supra*, 2 Cal.3d at p. 905.) Such decisions concerning trial witnesses are "within the exclusive control of trial counsel." (*People v. Lindsey* (1978) 84 Cal.App.3d 851, 859.)

Further, "[i]n seeking discharge of a court appointed attorney the defendant must show more than the fact the attorney made a mistake, he must show lack of competence." (*People v. Lee* (2002) 95 Cal.App.4th 772, 779.)

On appeal, we review a trial court's decision denying a *Marsden* motion to relieve appointed counsel under the deferential abuse of discretion standard. (*People v. Hart* (1999) 20 Cal.4th 546, 603.)

## II. The trial court properly denied Sims's *Marsden* motion.

The trial court did not abuse its discretion in denying Sims's request for substitution of counsel. The trial court read each of Sims's complaints in his declaration, considered defense counsel's responses to each of Sims's grievances, and then allowed Sims to reply with several opportunities to articulate his concerns. Under such circumstances, the "trial court was entitled to credit counsel's explanations and to conclude that defendant's complaints were unfounded." (*People v. Taylor* (2010) 48 Cal.4th 574, 600.)

For instance, the trial court reasonably could find that defense counsel had properly made an informed tactical decision not to call Keaton as a witness because of the multiple sound reasons proffered by defense counsel at the *Marsden* hearing: (1) to force the prosecution to trial without its main complaining witness, (2) to obtain dismissal of counts 3 and 4, (3) to prevent the jury from learning that Sims was on parole when the police arrested him, and (4) to support the defense strategy founded on Keaton's motive for fabricating her account of domestic abuse.

In *People v. Lindsey*, *supra*, 84 Cal.App.3d 851, the defendant and appointed counsel disagreed over which individuals to call as witnesses. (*Id.* at p. 859.) On appeal, this District held that the decision regarding which witnesses to call was a tactical one left to trial counsel: "It was within the discretion of the public defender not to call witnesses

7

determined by her through interview to be detrimental to the defense." (*Id.* at pp. 859–860.)

Similarly here, given the many disadvantages to calling Keaton as a witness, defense counsel reasonably believed that Sims's request would lead to a net loss. (See, e.g., *People v. Vines* (2011) 51 Cal.4th 830, 878 [tactical decision whether to call alibi witness]; *People v. Williams*, *supra*, 2 Cal.3d at pp. 900, 905–906 [same]; *People v. Dickey*, *supra*, 35 Cal.4th at p. 922 [tactical decision whether to present defendant's theory to the jury].)

On appeal, Sims contended that defense counsel's decision not to call Keaton "was partially motivated" by an "inaccurate understanding of the law": defense counsel believed the information charged "'violent strikes.'"[6] Based on that misunderstanding, according to Sims, because his case had previously been dismissed, defense counsel believed that the law allowed the prosecution one more dismissal and that the prosecution would not be able to proceed at trial without Keaton's testimony (resulting in a second dismissal) and therefore defense counsel "was eager to push the case to trial" absent Keaton's testimony based on the belief that "it was unlikely the People would re-file the case [a third time]."

However, the trial court reasonably concluded that, contrary to Sims's assertion, the primary basis for defense counsel's decision not to call Keaton as a witness was not

---

[6] Defense counsel's statement relied on by Sims occurred in the following colloquy: "Court [reading from Sims's declaration]: [¶] . . . [¶] . . . I asked [defense counsel] if she had the preliminary hearing transcript from the original case, which I take to mean the original filing, and [defense counsel] advertised that she was unaware that this case was a refile. [¶] Okay, your comments." "[Defense counsel]: Well, first of all, I knew very much that this was a refile. That was part of why proceeding to trial when there was no complaining witness present was important, because there had already been one dismissal in this case. Because there are violent strikes alleged, technically they could have proceeded—dismissed one more time and tried one more time. They're allowed two dismissals on violent strikes. However, that is not usually the practice of the D.A.'s office, so I did not want to allow for a continuance. I knew very well that this was a refile."

8

an inaccurate understanding of the law but rather the numerous sound tactical reasons articulated by defense counsel at the *Marsden* hearing. (See *People v. Taylor*, *supra*, 48 Cal.4th at p. 600 ["trial court was entitled to credit counsel's explanations"].) Even if defense counsel did make a good faith mistake as to whether the charged offenses were "violent strikes," any such mistake did not deny Sims the effective assistance of counsel because multiple valid reasons supported defense counsel's tactical decision not to call Keaton as a witness.[7] (See *People v. Lee*, *supra*, 95 Cal.App.4th at p. 779.)

Based on this record, the conflict between Sims and defense counsel over whether to call Keaton as a witness was a tactical disagreement—and "a disagreement in which counsel seems to have taken the wiser view." (*People v. Dickey*, *supra*, 35 Cal.4th at p. 922.) Thus, Sims's complaints fell short of establishing that defense counsel had not been """"providing adequate representation""""" or that she and Sims had """"become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.""""" (*People v. Memro*, *supra*, 11 Cal.4th at p. 857.)

Sims's second ground of dissatisfaction on appeal was that defense counsel refused Sims's request to call his parents as "character witnesses to discredit" Keaton; according to Sims, his parents' declarations filed in support of his *Marsden* motion "corroborated [Keaton's] claim she had lied to the police that night." However, at the *Marsden* hearing, defense counsel controverted Sims's factual assertions and presented several reasons why Sims's request would not have been tenable or in his best interests: (1) despite conversing with defense counsel "almost every day of trial" and "spen[ding]

---

[7] On appeal, the People argue that regardless of any misunderstanding of whether the charged offenses were ""'serious felonies,'" defense counsel ultimately was correct that the "prosecutor may have, in fact, been precluded from re-filing the matter" a third time pursuant to section 1387. The record before us, however, is insufficient to reach a conclusion about whether the prosecutor could have re-filed the matter a third time. Section 1387 bars the third prosecution of a felony unless certain exceptions apply. The record on appeal does not contain information essential to determining whether those conditions apply here; nor have the parties fully briefed the issue (other than conclusory statements unsupported by record references).

9

many, many recesses speaking with" defense counsel in the ante room, neither parent ever told defense counsel that Keaton had fabricated the accusations of domestic abuse;[8] (2) Sims and his parents failed to disclose promptly to defense counsel their desire for the parents to testify as witnesses; if either parent had expressed a desire to testify, defense counsel would not have allowed them to sit in the courtroom during the trial;[9] (3) because Sims's parents only made statements to defense counsel concerning Keaton and Sims's "relationship generally and how these things have happened before," defense counsel believed the trial court would deem those statements inadmissible (for lack of personal knowledge or not qualifying as a prior consistent statement); and (4) defense counsel presented "plenty of documents [to the jury] to attack [Keaton's] credibility [for example] the custody records."

To the extent that Sims's version of the events diverged from defense counsel's version, the trial court, being familiar with the case and observing the demeanor and presentation of both Sims and defense counsel at the *Marsden* hearing, "was entitled to credit counsel's representations." (*People v. Myles* (2012) 53 Cal.4th 1181, 1207.) In *People v. Myles*, the defendant complained that "he did not know what counsel was doing" and that appointed counsel refused to pursue defendant's suggested motions and lines of investigation; yet appointed counsel informed the trial court that he and the defendant had discussed defendant's suggestions many times and that he "was pursuing

---

[8] Counsel "has an ethical obligation not to present perjured testimony"; an attorney's refusal to participate in such presentation does not deny the client effective assistance of counsel. (*People v. Jennings* (1999) 70 Cal.App.4th 899, 907.)

[9] Evidence Code section 777, subdivision (a), provides that "the court may exclude from the courtroom any witness not at the time under examination so that such witness cannot hear the testimony of other witnesses." The purpose of the rule "is to prevent tailored testimony and aid in the detection of less than candid testimony." (*People v. Valdez* (1986) 177 Cal.App.3d 680, 687.) A court may disqualify a witness if counsel is at fault for choosing to have a potential witness present during other witnesses' testimony and later calling that person as a witness in knowing violation of a court's exclusion order. (*Id.* at p. 692; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1063.)

10

everything he could." (*Ibid.*) Affirming the order denying defendant's *Marsden* motion, the California Supreme Court held that the trial court, faced with a credibility question between defendant and appointed counsel, acted within its authority to accept appointed counsel's assertion. (*Ibid.*) Similarly here, we must defer to the trial court's credibility determinations and thus decline to overturn its findings on appeal.[10]

Sims also argues on appeal that defense counsel's decision not to call character witnesses to discredit Keaton stemmed from a legally erroneous assumption: defense counsel allegedly believed that in light of Keaton's absence as a testifying witness, her credibility and therefore the proffered character witnesses were "not relevant." [11]

But Sims has selectively parsed this comment from the larger argument defense counsel made. Defense counsel's statement was most likely a misstatement because she clearly understood the importance of Keaton's credibility: "And how Ms. Keaton is presented in front of a jury I think is very important. It goes to her credibility."

Reading in context defense counsel's statement on which Sims relies—and since we must defer to the trial court's credibility determination that defense counsel was a reasonably competent attorney—we adopt a more reasonable interpretation of the statement. We read her statement as an informed choice among tactical alternatives: rather than relying on the testimony of Sims's parents as character witnesses, defense

---

[10] In addition, the trial strategy proffered by Sims appears likely to create a risk of jury confusion by requiring contradicting credibility determinations: he first would tell the jury to deem credible Keaton's testimony on his behalf and then he would present character witnesses to "discredit" Keaton on the stand.

[11] Defense counsel made the statement at issue in the following context: "[Sims's mother] told me about a whole bunch of witnesses in Mr. Sims' family who know about their relationship and who know that they have a rocky relationship and Ms. Keaton can lie. She didn't give me any personal knowledge. Her information went more to character. In my opinion, I thought these people would be character witnesses, which aren't relevant when Ms. Keaton isn't in the courtroom to testify. So she's not here. [¶] I have plenty of documents, in my opinion, to attack her credibility as far as the custody records, and I do not think that what the . . . family members were telling me could have been admitted in this courtroom."

11

counsel chose an alternate method based on documentary evidence to challenge Keaton's credibility in front of the jury. Such a reading is consistent with the very next statement made by defense counsel: "I have plenty of documents, in my opinion, to attack her credibility as far as the custody records." Reasonably competent counsel in these circumstances can make the tactical choice that a jury may well give documentary evidence more weight than the testimony of the defendant's parents given their obvious motive to minimize the degree of their son's culpability. Further, we must give wider latitude to oral statements made in the heat of a hearing where it is easier to misstate a point or make ambiguous statements that could be more clearly stated later with hindsight. Thus, defense counsel's single potentially erroneous statement regarding the relevance of testimony from character witnesses is not sufficient to compel discharge of appointed counsel.

There being no showing of a substantial impairment of Sims's constitutional right to the effective assistance of counsel, we cannot conclude that the trial court abused its discretion in denying Sims's *Marsden* motion. (See *People v. Memro*, *supra*, 11 Cal.4th at p. 857.)

## III.     The trial court properly denied Sims's request for appointment of independent counsel to prosecute his *Marsden* motion.

Sims faults the trial court for not appointing independent counsel to assist him in preparing for, and presenting arguments during, the *Marsden* hearing. However, Sims cites no authority requiring such an appointment; indeed, the rule is to the contrary. (*People v. Memro*, *supra*, 11 Cal.4th at pp. 858–859; *People v. Hines* (1997) 15 Cal.4th 997, 1024–1025.[12])

The California Supreme Court has rejected the argument that "an accused has a constitutional right to the assistance of a separate attorney to argue that appointed trial

---

[12] The People rely on *People v. Sanchez* (2011) 53 Cal.4th 80; Sims disputes the relevance of that case; yet, both parties fail to cite *People v. Memro*, *supra*, 11 Cal.4th 786 or *People v. Hines*, *supra*, 15 Cal.4th 997.

counsel is ineffective and should be replaced." (*People v. Hines*, *supra*, 15 Cal.4th at p. 1025.)  Our high court has explained, "Appointment of independent counsel to assist a defendant in making a *Marsden* motion is likely to cause unnecessary delay, and may damage the attorney-client relationship in those cases in which the trial court ultimately concludes that the motion should be denied.  We see no need for trial courts to appoint independent counsel to assist defendants making such motions." (*Ibid*.)  The trial court here did not err in refusing to appoint new counsel for the purpose of helping Sims prosecute his *Marsden* claim.

**IV.    We decline to rule on Sims's request that this court take judicial notice of the records in underlying case number B244905.**

If a party wants this court to take judicial notice of a matter, that party must file a motion seeking judicial notice as required by California Rules of Court, rules 8.252 and 8.366(a).  Sims has not filed a separate motion that complies with these requirements; rather, he inserts a one-sentence request in his opening brief.  His request is not properly before us, as it does not comply with our court rules; accordingly, we decline to rule on the request.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

13
